IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MARIA YOLANDA NICARAGUA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:12-cv-2109-G-BN |
| | § | |
| CAROLYN W. COLVIN, | § | |
| Acting Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Plaintiff Maria Yolanda Nicaragua seeks judicial review of a final adverse decision of the Commissioner of Social Security pursuant to 42 U.S.C. § 405(g). For the reasons stated herein, the hearing decision should be reversed and remanded for further proceedings.

**Background**

Plaintiff alleges that she is disabled due to a variety of ailments, including diabetes mellitus, hypertension, history of coronary artery diseases and cardiomegaly, low back pain, obesity, glaucoma, headaches, dizziness, hyperlipidemia, arthritis, conjunctivitis, abdominal pain, adnexal mass, blurry vision, and hypoventilation (shortness of breath). After her application for supplemental security income ("SSI") benefits was denied initially and on reconsideration, Plaintiff requested a hearing before an administrative law judge ("ALJ"). That hearing was held on March 11, 2011. At the time of the hearing, Plaintiff was 46 years old. She completed the tenth grade

and has a high school equivalency diploma and past work experience as a short-order cook. Plaintiff has not engaged in substantial gainful activity since January 14, 2009.

The ALJ found that Plaintiff was not disabled and therefore not entitled to SSI benefits. Although the medical evidence established that Plaintiff suffered severe impairments from diabetes mellitus, hypertension, history of coronary artery disease and cardiomegaly, low back pain, and obesity, the ALJ concluded that the severity of those impairments did not meet or equal any impairment listed in the social security regulations. The ALJ further determined that Plaintiff had the residual functional capacity to perform her past relevant work as a short-order cook.

Plaintiff appealed that decision to the Appeals Council. The Council denied Plaintiff's request for review, and the ALJ's decision became final.

Plaintiff then filed this action in federal district court. In multiple grounds for relief, Plaintiff argues that the ALJ committed reversible error by: (1) failing to apply the appropriate legal standard established by the United States Court of Appeals for the Fifth Circuit in deciding which of Plaintiff's impairments are severe at Step 2 of the Sequential Analysis; (2) failing to comply with the Social Security rulings in making the implicit determination that Plaintiff's non-compliance with medical treatment precludes disability; (3) failing to consider the factors set forth in 20 C.F.R. §§ 404.1527 and 416.927 before declining to give weight to the opinions of Plaintiff's treating specialist; (4) failing to order a consultative examination of Plaintiff's arthritis condition; and (5) failing to follow Social Security Regulation ("SSR") 96-6p in determining that the State Agency Medical Consultant's opinion was valid.

The undersigned recommends that the hearing decision be reversed and this case remanded to the Commissioner of Social Security for further proceedings.

## Legal standards

Judicial review in social security cases is limited to determining whether the Commissioner's decision is supported by substantial evidence and whether the proper legal standards were used to evaluate the evidence. *See* 42 U.S.C. § 405(g); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The Commissioner, rather than the courts, must resolve conflicts in the evidence, including weighing conflicting testimony and determining witnesses' credibility, and the Court does not try the issues *de novo*. *See Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995); *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994). This Court may not reweigh the evidence or substitute its judgment for the Commissioner's but must scrutinize the entire record to ascertain whether substantial evidence supports the hearing decision. *See Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988).

A disabled worker is entitled to monthly social security benefits if certain conditions are met. *See* 42 U.S.C. § 423(a). The Act defines "disability" as the inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or last for a continued period of 12 months. *See id.* § 423(d)(1)(A); *see also Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985). The Commissioner has promulgated a five-step sequential evaluation process that must be followed in making a disability determination:

1.   The hearing officer must ascertain whether the claimant is engaged in substantial gainful activity. A claimant who is working is not disabled regardless of the medical findings.

2.   The hearing officer must determine whether the claimed impairment is "severe." A "severe impairment" must significantly limit the claimant's physical or mental ability to do basic work activities. This determination must be made solely on the basis of the medical evidence.

3.   The hearing officer must decide if the impairment meets or equals in severity certain impairments described in Appendix 1 of the regulations. The hearing officer must make this determination using only medical evidence.

4.   If the claimant has a "severe impairment" covered by the regulations, the hearing officer must determine whether the claimant can perform his or her past work despite any limitations.

5.   If the claimant does not have the residual functional capacity to perform past work, the hearing officer must decide whether the claimant can perform any other gainful and substantial work in the economy. This determination is made on the basis of the claimant's age, education, work experience, and residual functional capacity.

See 20 C.F.R. § 404.1520(b)-(f); *Audler v. Astrue*, 501 F.3d 446, 447-48 (5th Cir. 2007) ("In evaluating a disability claim, the Commissioner conducts a five-step sequential analysis to determine whether (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity."). The claimant bears the initial burden of establishing a disability through the first four steps of the analysis; on the fifth, the burden shifts to the Commissioner to show that there is other substantial work in the national economy that the claimant can perform. *See Audler*, 501 F.3d at 448. A finding

that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *See Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

In reviewing the propriety of a decision that a claimant is not disabled, the Court's function is to ascertain whether the record as a whole contains substantial evidence to support the Commissioner's final decision. The Court weighs four elements to determine whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *See Martinez*, 64 F.3d at 174.

The ALJ has a duty to fully and fairly develop the facts relating to a claim for disability benefits. *See Ripley*, 67 F.3d at 557. If the ALJ does not satisfy this duty, the resulting decision is not substantially justified. *See id.* However, the Court does not hold the ALJ to procedural perfection and will reverse the ALJ's decision as not supported by substantial evidence where the claimant shows where the ALJ failed to fulfill the duty to adequately develop the record only if that failure prejudiced Plaintiff, *see Jones v. Astrue*, 691 F.3d 730, 733 (5th Cir. 2012) – that is, only if Plaintiff's substantial rights have been affected, *see Audler*, 501 F.3d at 448. "Prejudice can be established by showing that additional evidence would have been produced if the ALJ had fully developed the record, and that the additional evidence might have led to a different decision." *Ripley*, 67 F.3d at 557 n.22. Put another way, Plaintiff "must show that he could and would have adduced evidence that might have altered the result." *Brock v. Chater*, 84 F.3d 726, 728-29 (5th Cir. 1996).

### Analysis

Among the arguments that Plaintiff makes are two grounds that merit relief, and the undersigned will address those two grounds together. Plaintiff asserts that the ALJ erred by not considering the Section 404.1527 and 416.927 factors before declining to give weight to her treating specialist's opinions and that the ALJ failed to properly consider and weigh the consulting examiner's opinion. Because, based on the particular facts of this case, the ALJ's decision runs afoul of *Newton v. Apfel*, 209 F.3d 448 (5th Cir. 2000), the undersigned recommends that the case be reversed and remanded on this issue for proceedings consistent with these findings and conclusions.

<u>The Treating and Examining Physicians' Opinions</u>

Plaintiff contends that the ALJ erred by not considering the Section 404.1527 and 416.927 factors before declining to give weight to the opinions of her treating specialist.

In *Newton*, the Fifth Circuit held that "[t]he opinion of the treating physician who is familiar with the claimant's impairments, treatments and responses, should be accorded great weight in determining disability." 209 F.3d at 455. "A treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with ... other substantial evidence." *Id.* (internal quotations omitted). "The opinion of a specialist generally is accorded greater weight than that of a non-specialist." *Id.* (internal quotations omitted). However, the ALJ is "free to reject the opinion of any physician when the evidence supports a contrary conclusion" when good cause is shown. *Id.* at 455-56 (internal quotations

omitted). An ALJ may show good cause "where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence." *Id.* at 456.

Social Security Administration ("SSA") Regulations provide that the SSA "will always give good reasons in [its] notice of determination or decision for the weight [it gives the claimant's] treating source's opinion" and list factors that an ALJ must consider to assess the weight to be given to a treating physician's opinion when the ALJ determines that the opinion is not entitled to "controlling weight." 20 C.F.R. § 404.1527(d)(2). Specifically, this regulation requires consideration of:

(1) the physician's length of treatment of the claimant;

(2) the physician's frequency of examination;

(3) the nature and extent of the treatment relationship;

(4) the support of the physician's opinion afforded by the medical evidence of record;

(5) the consistency of the opinion with the record as a whole; and

(6) the specialization of the treating physician.

*See* 20 C.F.R. § 404.1527(c).

In *Newton*, the Fifth Circuit concluded that, "absent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician only if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(d)(2)." 209 F.3d at 453. However, in decisions construing *Newton*, the Fifth Circuit has explained that "[t]he *Newton* court limited its holding to cases where

the ALJ rejects the sole relevant [treating or examining] medical opinion before it."
*Qualls v. Astrue*, 339 F. App'x 461, 467 (5th Cir. 2009). Therefore, where there are competing opinions of examining physicians, the ALJ need not necessarily set forth his analysis of the Section 404.1527(d) factors when declining to give controlling weight to a treating physician. *See id.* at 466-67.

In this case, two examining physicians submitted medical source statements – Plaintiff's treating physician, Dr. Cynthia Perry, and a consulting examiner, Dr. Jamie Salinas. Dr. Perry submitted a medical source statement that indicated that Plaintiff was severely limited and would be unable to perform even sedentary work. *See* Dkt. No. 16-5 at 863-65. Dr. Perry based her determination on an x-ray showing multiple level degenerative changes. *See id.* Dr. Perry also submitted a medical source statement specifically related to Plaintiff's diabetic condition. *See id.* at 854-55. In this assessment, Dr. Perry noted that Plaintiff's diabetes had not resulted in significant and persistent disorganization of motor function. *See id.* at 854.

Dr. Salinas determined that Plaintiff had an abnormal EKG and suffered from cardiomegaly without failure, diabetes type II, hypertension, osteoarthritis, and lumbar sacral strain. *See* Dkt. No. 15-8 at 395. Dr. Salinas recommended that Plaintiff undergo a number of further tests and noted that Plaintiff "is a good candidate for disability." *Id.*

In addition to these physicians' medical source statements, the record contains a Residual Functional Capacity Assessment ("RFC Assessment") from Dr. Terry Collier, a non-examining physician, and Dr. Alice Cox, a non-examining medical expert (the "ME"). Dr. Cox testified at the hearing. The RFC Assessment concluded that

Plaintiff retained the capacity to perform light work. *See id.* at 398-405. Dr. Cox testified at the hearing that Dr. Perry's two medical source statements were contradictory and that neither Dr. Perry's nor Dr. Salinas's findings were supported by the record. *See* Dkt. No. 15-2 at 66-69, 81. Dr. Cox, with a few minor alterations, adopted the findings in Dr. Collier's RFC Assessment and concluded that Plaintiff retained the capacity to perform light work with some restrictions. *See id.* at 69, 81.

The ALJ, in turn, adopted the ME's conclusions. In his decision, after noting Dr. Perry's findings, the ALJ stated:

> Dr. Cox noted that Dr. Perry's opinions were contradictory and not supported by her treatment records or the other medical evidence. This rendered those opinions less persuasive. The State agency reviewing physician assessed the claimant with a residual functional capacity for light work, which was generally supported by the evidence (Exhibit 4F).

*Id.* at 27.

The ALJ provided no additional discussion of Dr. Perry's medical source statements in his decision and did not incorporate any of her recommendations into his RFC determination. The ALJ failed to mention Dr. Salinas's medical source statement at all.

The facts of this case put it squarely within *Newton*'s purview. Per *Newton*'s strictures, when the ALJ decided to afford essentially no weight to the only opinions of examining physicians in the record – one of whom is a treating physician – and instead adopt the opinion of the non-examining sources, the ALJ had an obligation to consider each of the Section 404.1527 factors. *See Newton*, 209 F.3d at 453. The ALJ failed to perform the proper analysis and should do so on remand. *See id.* at 456.

The undersigned acknowledges that the ALJ did recite, with no further elaboration, that he considered "opinion evidence in accordance with the requirements of 20 C.F.R. 416.927" as well as other regulations. *See* Dkt. No. 15-2 at 24. However, this statement, on its own, is not sufficient to satisfy *Newton*.

Moreover, a review of the record in this case reveals that the ME's and ALJ's determination that Dr. Perry's medical source statements were inconsistent may well be erroneous. The ME – on whose opinion the ALJ relied in making his RFC determination – concluded that Dr. Perry's medical source statements were inconsistent because Dr. Perry concluded that Plaintiff's diabetes did not cause a sustained disturbance of gait in station or ability to stand and walk, whereas Dr. Perry's other statement concluded that Plaintiff could only stand for three hours. *See id.* at 67-68. However, Dr. Cox fails to note that one of Dr. Perry's statements was assessing solely Plaintiff's diabetes and that the other was based on Plaintiff's x-ray. Therefore, it may well be that, while Dr. Perry did not believe Plaintiff's diabetes was disabling, she concluded that Plaintiff's low back pain was. At a minimum, the ALJ should have re-contacted Dr. Perry to clarify "what at first appeared to be an inconsistency." SSR 96–2p; *accord Newton*, 209 F.3d at 457-58 ("In this case, the ALJ expressed doubts about [the treating physician's] opinions based on [the ME's] criticisms and [plaintiff's] later part-time work, but did not request additional information to eliminate those doubts before rejecting the opinion of the treating physician.").

The undersigned notes that the ALJ also stated that Dr. Perry's opinions were "not supported by her treatment records or the other medical evidence." Dkt. No. 15-2

at 27. Courts in this district do not always require the ALJ to discuss each of the Section 404.1527(c)(1) factors if it is clear that the ALJ has nevertheless considered the factors and the ALJ's decision to give no weight to the treating physician constitutes "good cause." *Brock v. Astrue*, No. 3:10-cv-1399-BD, 2011 WL 4348305, at *4 (N.D. Tex. Sept. 16, 2011). In this case, however, the ALJ did not provide "good cause" for rejecting Dr. Perry's opinion, which was supported by an x-ray and by Dr. Salinas's opinion, which the ALJ wholly ignored. *See* Dkt. No. 16-5 at 863-64; 395. "Good cause does not exist when the ALJ has not considered all relevant evidence of record." *Bragg v. Comm'r of Soc. Sec. Admin.*, 567 F. Supp. 2d 893, 911 (N.D. Tex. 2008).

In addition, although Dr. Salinas, the consultative examiner, is not a "treating" physician entitled to controlling weight, more weight is generally given to the opinion of an examining physician, even though he did not treat the claimant, than to a non-examining physician's opinion. *See* 20 C.F.R. § 404.1527(c)(1); *see also Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990) (ALJ may rely on a non-examining physician's assessment only where it does not contradict the examining physician). While it is not clear to the undersigned that SSR 96-6p, cited by the Plaintiff, applies to Dr. Salinas, as that section appears to apply to non-examining sources, the ALJ should have at least discussed Dr. Salinas's opinion in his decision and explained the weight he afforded it. Because the ALJ's decision contained no mention of Dr. Salinas's opinion, the undersigned must conclude that the ALJ did not consider it at all or, at least, failed to assign it any weight. In the absence of any conflicting opinions from other examining sources, failure to consider and weigh Dr. Salinas's medical source statement was error.

The undersigned notes that the evidence in the record may well support a finding that Plaintiff is not disabled. For example, a December 4, 2009 treatment note from Dr. Miguel Zabalgoitia-Reyes, a treating physician at Valley Baptist Medical Center – Brownsville states:

> Interestingly, the patient insists on disability every time that I visit her and certainly from the cardiac point of view, a 45-year-old woman with diabetes and hypertension with mild distal coronary arteriography should be able to ... perform her work. However, she insists on the matter and I will refer this matter to the primary care team.

Dkt. No. 16 at 579. However, the ME failed to discuss this treatment note in her testimony, and the ALJ did not reference it in his decision. Because it is not the court's role to reweigh the evidence, *Hollis*, 837 F.2d at 1383, it would be improper for the undersigned to attempt to resolve conflicts in the evidence. "The ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision, as adopted by the Appeals Council." *Newton*, 209 F.3d at 455. "Reviewing courts do not consider rationales supporting an ALJ's decision that are not invoked by the ALJ." *Bragg*, 567 F.Supp. 2d at 907.

The ALJ's failure to consider the Section 404.1527 factors when rejecting Dr. Perry's opinions and failure to consider Dr. Salinas's opinion was prejudicial error. It is the ALJ's responsibility to weigh the evidence, and the Court is unable to say what the ALJ would have done had he weighed all relevant evidence of record. The opinions expressed by Dr. Perry and Dr. Salinas included significant limitations beyond those that the ALJ recognized in determining both Plaintiff's residual function capacity and her ability to engage in any form of substantial gainful activity. Had the ALJ given proper consideration to the treating and examining physicians' records and assessment

of Plaintiff's ability to engage in work-related activities, the ALJ might have reached a different decision as to disability. This is especially true in light of the fact that the burden lies with the Commissioner at Step 5 to identify gainful employment available in the national economy that the claimant is capable of performing. *See Greenspan*, 38 F.3d at 236; see also *Myers v. Apfel*, 238 F.3d 617, 621-22 (5th Cir. 2001) (holding that remand was required when the ALJ failed to consider all evidence from a treating source and failed to present good cause for rejecting it); *Newton*, 238 F.3d at 621-22 (holding that remand was required when the ALJ failed to consider each of the Section 404.1527 factors before declining to give weight to the opinions of the claimant's treating specialist); *Harris v. Astrue*, No. 3:11-cv-1089-M-BH, 2012 WL 4442303, at *15 (N.D. Tex. Sept. 7, 2012), *rec. adopted*, 2012 WL 4458405 (N.D. Tex. Sept. 26, 2012).

Therefore, the undersigned concludes that the ALJ's failure to consider the Section 404.1527 factors in connection with Dr. Perry's opinion and to explain the weight given to Dr. Salinas's opinion was prejudicial error and recommends that this matter should be reversed and remanded.

<u>Credibility Determination</u>

The Court notes that, under the social security regulations, the failure to follow a prescribed course of treatment "without a good reason" precludes a finding of disability. *See* 20 C.F.R. § 416.930(b); *see also id.* § 404.1530(b). The ALJ must develop the record to determine whether the claimant justifiably failed to undergo the treatment prescribed. *See* SSR 82-59, 1982 WL 31384, at *2 (S.S.A. 1982). If the evidence suggests that the claimant does not have a good reason for failing to follow the prescribed treatment, the claimant must be informed of that fact and of its effect

on the eligibility for benefits. *See id.* at *5. The claimant must be afforded an opportunity to comply with the prescribed treatment or to show "justifiable cause" for failing to do so. *Id.* However, these procedures "only apply to claimants who would otherwise be disabled within the meaning of the Act." *Hawkins v. Astrue*, No. 3:09-cv-2094-BD, 2011 WL 1107205, at *2-3 (N.D. Tex. Mar. 25, 2011) (internal citations omitted).

The undersigned, after reviewing the ALJ's decision as a whole, concludes that the ALJ did not base his denial of benefits on Plaintiff's noncompliance with taking her medication but, instead, found that such noncompliance undermined Plaintiff's credibility. Because the case does not fall squarely under SSR 82-59, "any lack of notice and opportunity required by that ruling does not give rise to reversible error." *Seibert v. Astrue*, No. 4:09-cv-90-A, 2010 WL 6389303, at *10 (N.D. Tex. June 14, 2010) (citing *C.M.F. v. U.S. Comm'r of Soc. Sec. Admin*, No. 08-CV01942, 2009 WL 5175187, at *4 (W.D. La. Dec. 18, 2009)); *cf. Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990) (stating that, because there was no evidence, besides the claimant's own testimony, that he was disabled with or without regular medical treatment, the ALJ was not precluded from relying upon the lack of treatment as an indication that the claimant was not disabled).

However, to provide clarity on remand, the undersigned notes that the ALJ should reexamine his credibility determination in light of the additional analysis that he must perform when weighing the treating and examining physicians' opinions. The undersigned further notes that, to the extent that the ALJ based his credibility finding on Plaintiff's noncompliance with treatment, that reliance is not supported by the

record. The record is replete with references to Plaintiff's inability to afford treatment, including both further care from specialists and her prescriptions. *See, e.g.*, Dkt. No. 15-9. at 438; Dkt. No. 16 at 593. As such, it was likely error for the ALJ to consider Plaintiff's noncompliance to undermine her credibility. *See Lovelace v. Bowen*, 813 F.2d 55, 59-60 (5th Cir. 1987) ("As this circuit did, in *Taylor v. Bowen*, every other circuit that has considered the question, so far as we can find, has concluded that the medicine or treatment an indigent person cannot afford is no more a cure for his condition than if it had never been discovered. Decisions to this effect have been rendered in the Fourth, Eighth, and Tenth Circuits. To a poor person, a medicine that he cannot afford to buy does not exist."). But the ALJ appears to have considered Plaintiff's noncompliance with her treatment as a relatively minor factor in his credibility assessment. *See* Dkt. No. 15-2 at 25. Although the ALJ notes that "[t]he failure to follow prescribed treatments indicates a lack of desire to improve one's impairments and detracts from the claimant's credibility," the ALJ appeared to primarily base his credibility determination on a lack of medical evidence in the record. *Id.* Therefore, although the ALJ should reexamine his credibility determination as discussed above, no prejudice resulted from the ALJ's consideration of Plaintiff's noncompliance in the ALJ's original decision.

<u>Remaining Issues</u>

Plaintiff's two remaining points of error allege (1) that the ALJ failed to apply the appropriate legal standard established by the Fifth Circuit Court of Appeals in deciding which of Plaintiff's impairments are severe at Step 2 of the sequential

analysis and (2) that the ALJ erred by not ordering a consultative examination of Plaintiff's arthritis condition.

The *Stone v. Heckler* standard provides that "[a]n impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." 752 F.2d 1099, 1101 (5th Cir. 1985). But the mere mention of an impairment in the medical record does not establish that Plaintiff is disabled. *See Hames v. Harper*, 707 F.2d 162, 165 (5th Cir. 1983). Even the mere presence of diagnosis of an impairment – without more – is not sufficient to establish a severe impairment or a disability. *See id.* Rather, Plaintiff must show that she is so functionally impaired by the impairment that she is precluded from engaging in any substantial gainful activity. *See id.*; *accord Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012).

Because Plaintiff is entitled to remand based on the ALJ's failure to appropriately weigh the opinions of the treating and examining physicians, as well as the fact that the ALJ should re-evaluate his credibility determination in light of the remand, it is not possible to determine whether the ALJ's severity determinations were supported by substantial evidence. The ALJ's severity determinations may be substantially affected if, on remand, the ALJ gives Dr. Perry's and Dr. Salinas's opinions greater, if not controlling, weight. On remand, the ALJ's severity determinations should, of course, be made by citing and properly applying the *Stone* standard.

Similarly, Dr. Salinas diagnosed Plaintiff with arthritis. If the ALJ determines that he should give Dr. Salinas's opinion greater weight on remand or should alter his credibility finding of Plaintiff, the ALJ's determination as to whether to order a consultative examination of Plaintiff's arthritis condition could be substantially affected.

## Recommendation

The hearing decision should be reversed and this case should be remanded for further proceedings consistent with these findings and conclusions.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: August 5, 2013

_____

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE